FIDELITY & CASUALTY COMPANY OF NEW YORK v. WILLIAM EICKHOFF.[1]

December 13, 1895.

Nos. 9560—(141).

**Contract Guarantying Fidelity of Employé.**
> A contract of plaintiff with defendant's employer, guarantying his fidelity as employé, construed.

**Same.**
> This contract of guaranty having been executed at defendant's request, his obligation to indemnify the plaintiff is coextensive with the obligation of the latter to indemnify the employer; and any provisions in the contract between the plaintiff and the employer as to proof of liability which were binding on the plaintiff, in favor of the employer, are equally binding on the defendant, in favor of the plaintiff.

**Same—Public Policy.**
> A stipulation between plaintiff and defendant that the voucher or other evidence of payment by the plaintiff to the employer should be conclusive evidence against the defendant as to the fact and extent of his liability to the plaintiff *held* void, as against public policy, in so far as it made such voucher or other evidence of payment conclusive evidence.

**Sufficiency of Complaint.**
> *Held*, also, that the complaint stated a cause of action.

Appeal by plaintiff from an order of the district court for Polk county, Ives, J., sustaining a demurrer to the complaint. Reversed.

*Van Fossen, Frost & Brown,* for appellant.

The status of plaintiff in its relation to defendant is that of surety, using that term in its generic sense, or more specifically its status is

[1] Reported in 65 N. W. 351.

that of a guarantor by reason of its special promise to answer for the debt, default and miscarriage of defendant. Baylies, Sur. § 1; McMillan v. Bull's Head Bank, 32 Ind. 11; Monson v. Drakely, 40 Conn. 552; Gallagher v. Nichols, 60 N. Y. 438; Wendlandt v. Sohre, 37 Minn. 162, 33 N. W. 700; Smith v. Shelden, 35 Mich. 42. As showing the broad general rules governing contracts of this nature, see Union Bank v. Beatty, 10 La. An. 361; 1 Brandt, Sur. § 176; Pigou v. French, 1 Wash. C. C. 278, Fed. Cas. No. 11,161; Forest v. Shores, 11 La. 416; Hollinsbee v. Ritchey, 49 Ind. 261; 1 Estee, Pleadings, § 1359; Mauri v. Heffernan, 13 Johns. 58; 1 Brandt, Sur. § 183; Batchelor v. Planters' Nat. Bank, 78 Ky. 435; Mims v. McDowell, 4 Ga. 182; Snider v. Greathouse, 16 Ark. 72; Chipman v. Fambro, 16 Ark. 291; Pitts v. Fugate, 41 Mo. 405; Thomas v. Hubbell, 15 N. Y. 405; Hare v. Grant, 77 N. C. 203; Fay v. Ames, 44 Barb. 327. See Beauchaine v. McKinnon, 55 Minn. 318, 56 N. W. 1065; Dillingham v. Jenkins, 15 Miss. 479.

Defendant's liability to plaintiff is governed solely by the terms of the written contract of indemnity. Brandt, Sur. § 176; Touissant v. Martinnant, 2 T. R. 100. It is valid as constituting a rule of evidence agreed upon between the parties to govern any and all controversies between themselves arising under the contract of suretyship. The provision of the contract of indemnity respecting the effect of the voucher is valid, as an enlargement of contractual rights under the contract of suretyship existing between plaintiff and defendant. White v. Walker, 31 Ill. 422. Modus et conventio vincunt legem. Broom, Legal Maxims, 689; Gott v. Gandy, 23 L. J. Q. B. 1, per Erle, J.; Hubert v. Mendheim, 64 Cal. 213, 30 Pac. 633; Com. v. Perry, 155 Mass. 117, 28 N. E. 1126, and 14 L. R. A. 325; Ramsey v. People, 142 Ill. 380, 32 N. E. 364, and 17 L. R. A. 853. Where no principle of public policy is violated, parties are at liberty to forego the protection of the law. Sedgwick, Stat. & Const. Law, 86–88; Lee v. Tillotson, 24 Wend. 337; People v. Murray, 5 Hill, 468; Baker v. Braman, 6 Hill, 47; James v. Hendree's Adm'r, 34 Ala. 488; Richmond v. Dubuque & S. C. R. Co., 26 Iowa, 191; Kellogg v. Larkin, 3 Pinn. 123; Richardson v. Mellish, 2 Bing. 229; Parsons v. Trask, 7 Gray, 473, 66 Am. Dec. 502, 505, note; Tanner v. Smart, 6 B. & C. 603; Utica Ins. Co. v. Bloodgood, 4 Wend. 652; Allen v. Webster, 15 Wend. 284; Land's Adm'r v. Lacoste, 6 Miss. 471; Nixon's Heirs v. Carco's Heirs, 28 Miss. 414; Sugg v. Thrasher, 30 Miss. 135; Barrett v. Carden, 65 Vt. 431, 26

Atl. 530; Hamer v. Johnston, 6 Miss. 698; Dickson v. Green, 24 Miss. 612; Griffiths v. Earl of Dudley, L. R. 9 Q. B. D. 357; Western & A. R. Co. v. Bishop, 50 Ga. 465; Western & A. R. Co. v. Strong, 52 Ga. 461; Galloway v. Western & A. R. Co., 57 Ga. 512; Phyfe v. Eimer, 45 N. Y. 102; Kimball v. Munger, 2 Hill, 364; Fiero v. Reynolds, 20 Barb. 275; Cole v. Western U. Tel. Co., 33 Minn. 227, 22 N. W. 385; Utica Ins. Co. v. Bloodgood, supra; Anacosta Tribe v. Murbach, 13 Md. 91; Osceola Tribe v. Schmidt, 57 Md. 98; Black and White Smiths v. Van Dyke, 2 Whart. 309. It is valid as constituting a rule of evidence agreed upon between the parties to govern any and all controversies between themselves arising under the contract of suretyship. Randel v. Chesapeake & D. Canal Co., 1 Harr. (Del.) 233, 275; St. Paul & N. P. Ry. Co. v. Bradbury, 42 Minn. 222, 44 N. W. 1; Leighton v. Grant, 20 Minn. 298 (345); Denver & N. O. Construction Co. v. Stout, 8 Col. 61, 5 Pac. 627. See Kihlberg v. United States, 97 U. S. 398; Sweeney v. United States, 109 U. S. 618, 3 Sup. Ct. 344; Chicago, S. F. & C. R. Co. v. Price, 138 U. S. 185, 11 Sup. Ct. 290; Insurance Co. v. Morse, 20 Wall. 445; Stevenson v. Piscataqua Ins. Co., 54 Me. 55; Sugg v. Thrasher, supra; Snell v. Brown, 71 Ill. 133; Carter v. Carter, 109 Mass. 306; Tarbell v. Whiting, 5 N. H. 63; Monongahela Nav. Co. v. Fenlon, 4 W. & S. 205; Knox v. Symmonds, 1 Ves. Jun. 369; Sweet v. Morrison, 116 N. Y. 19, 22 N. E. 276; Seibert v. Minneapolis & St. L. Ry. Co., 52 Minn. 148, 53 N. W. 1134; Crumlish v. Wilmington & W. R. Co., 5 Del. Ch. 270. If the legislature had the power to make the voucher conclusive evidence between the parties hereto certainly such an agreement between the parties themselves would be valid. County Seat of Linn Co., 15 Kan. 500; Hand v. Ballou, 12 N. Y. 541; Howard v. Moot, 64 N. Y. 262; Cooley, Const. Lim. 450 (367); People v. Cannon, 139 N. Y. 32, 34 N. E. 759; Larson v. Dickey, 39 Neb. 463, 58 N. W. 167; State v. Cunningham, 25 Conn. 195; Lumsden v. Cross, 10 Wis. 282; Allen v. Armstrong, 16 Iowa, 508; Wright v. Dunham, 13 Mich. 414; Abbott v. Lindenbower, 42 Mo. 162; Sams v. King, 18 Fla. 557; Forbes v. Halsey, 26 N. Y. 53. The provision of the contract of indemnity respecting the effect of the voucher is valid by way of estoppel in favor of plaintiff against defendant. White v. Walker, supra; Harris v. Brooks, 21 Pick. 195; Bigelow, Estoppel (5th Ed.) 552, 684; Jaqua v. Shewalter, 10 Ind. App. 234, 37 N. E. 1072; Ward v. Johnson, 95 Ill. 215; Daniels v. Tearney, 102 U. S. 415; Whitney Arms Co. v.

Barlow, 63 N. Y. 62; Galloway v. Western & A. R. Co., supra; Burgess v. Badger, 124 Ill. 288, 14 N. E. 850; Loveman v. Taylor, 85 Tenn. 1, 2 S. W. 29; Probstfield v. Czizek, 37 Minn. 420, 34 N. W. 896; Jacobs v. Miller, 50 Mich. 119, 15 N. W. 42; Bishop, Cont. § 286; Fowler v. Saks, 7 Mack. 570, 7 L. R. A. 649; Keller v. Ashford, 133 U. S. 610, 10 Sup. Ct. 494; Warrenton v. Arrington, 101 N. C. 109, 7 S. E. 652.

Irrespective of the conditions of the contract of indemnity and without regard to allegations of a specific breach of the conditions of the bond, there are allegations in the complaint sufficient to shift the burden of proof and require defendant to allege and prove other facts by way of defense, in order to prevent plaintiff's recovery. This appears on account of the fiduciary relations of the parties. Rochester v. Levering, 104 Ind. 562, 4 N. E. 203; Coggins v. Flythe, 113 N. C. 102, 18 S. E. 96; Illinois F. Ins. Co. v. Stanton, 57 Ill. 354; Smith v. Compton, 3 B. & Ad. 407; Bank v. Adams, 12 Pick. 303; Atkins v. Withers, 94 N. C. 581; Huguenin v. Baseley, 14 Ves. Jun. 273, 2 White & Tudor, L. Cas. Eq. 580, and notes; 2 Pomeroy, Eq. § 956; Bank v. Barrington, 2 P. & W. 27; Murfree, Official Bonds, § 597; State v. Wall, 2 Ired. 267; Dunton v. Doxey, 7 Jones, N. C. 222; Wilson v. Coffield, 5 Ired. 513. The subject matter of the allegations of the complaint relating to a breach of the conditions of the bond, is peculiarly within the knowledge of the defendant, and therefore, if he wishes to prevent plaintiff's recovery, the burden of proof is on him to give evidence respecting it. Abbott's Trial Brief, 86; People v. Cannon, supra; Corwin v. Shoup, 76 Ill. 246; Burton v. Blin, 23 Vt. 151.

The complaint states a cause of action, viewed as an action based upon the written contract of indemnity, without reference to those allegations of the complaint, which set forth a breach of the conditions of the bond, and a cause of action thereon in favor of the party guarantied (the employer) and against plaintiff. The essential allegations are:

A request for a bond on the part of defendant; the furnishing of such a bond to the employer and his acceptance thereof; a promise either expressed or implied to reimburse plaintiff on account of losses incurred by reason of said bonding; a breach of the conditions of the indemnifying bond; a claim upon plaintiff for payment of such loss under the bond; the payment by plaintiff to the employer of the

loss occasioned by the breach of the provisions of the bond; the failure of the agent to reimburse plaintiff for the amount so paid to the employer after demand so to do.    Protestant Board of School Commrs. v. Guarantee Co., 31 Low. Canada Jur. 254.    See Gutridge v. Vanatta, 27 Oh. St. 366.    The form of complaint has been approved.    2 Chitty, Pl. 92; 2 Boone, Code Pl. No. 514; Smith v. Jansen, 8 John. 86; Field v. Robins, 8 Ad. & El. 90; Stothert v. Goodfellow, 1 N. & M. 202; Connole v. People, 46 Ill. App. 72; Spaulding v. Mattingly, 89 Ky. 83; Altheimer v. Hunter, 56 Ark. 159, 19 S. W. 496; Ladd v. Smith (Ala.) 10 South. 836; Chester Co. v. Hemphill, 29 S. C. 584, 8 S. E. 195; People v. Foster, 133 Ill. 496, 23 N. E. 615; Benham v. United G. & L. Assur. Co., 7 Ex. 744; Towle v. National Guar. Assur. Soc., 30 L. J. Chanc. 900; Carpenter v. Solicitor, 51 L. J. Pro. 91. The complaint is good on demurrer even were it sought to avoid a transaction on the ground of fraud.    If the complaint alleges facts which if proved would establish fraud as a conclusion of law, the allegation of fraud is sufficient.    Andrews v. King Co., 1 Wash. 46, 23 Pac. 409; Bromley v. Smith, 26 Beav. 644, 671; Hess v. Young, 59 Ind. 379; Parham v. Randolph, 5 Miss. 435, 35 Am. Dec. 403; Kerr, Fraud & Mistake, 366; In re Shotwell, 43 Minn. 389, 45 N. W. 842; Cock v. Van Etten, 12 Minn. 431 (552); Story, Eq. Jur. § 190; Gale v. Gale, 19 Barb. 249; Swinfen v. Chelmsford, 5 H. & N. 890; People v. Brush, 6 Wend. 454.

An allegation that plaintiff has complied with G. S. 1894, § 3331, is unnecessary.    The court will not presume that plaintiff is a transgressor against the laws.    First Nat. Bank v. Bressler, 38 Ill. App. 499.    Even if plaintiff has not complied with the statute, the contract is not void on that account.    Wright v. Lee, 2 S. Dak. 596, 51 N. W. 706; Washburn Mill Co. v. Bartlett, 3 N. Dak. 138, 54 N. W. 544; Toledo T. & L. Co. v. Thomas, 33 W. Va. 566, 11 S. E. 37; Columbus Ins. Co. v. Walsh, 18 Mo. 229; Union M. L. Ins. Co. v. McMillen, 24 Oh. St. 67; Harris v. Runnels, 12 How. 79; Larned v. Andrews, 106 Mass. 435; Aiken v. Blaisdell, 41 Vt. 655; De Mers v. Daniels, 39 Minn. 158, 39 N. W. 98; Pangborn v. Westlake, 36 Iowa, 546; Rahter v. First Nat. Bank, 92 Pa. St. 393; National Bank v. Matthews, 98 U. S. 621; Dearborn Foundry Co. v. Augustine, 5 Wash. 67, 31 Pac. 327; Morawetz, Priv. Corp. §§ 662–666; State M. F. Ins. Assn. v. Brinkley S. & H. Co. (Ark. Sup. Ct.) 31 S. W. 157; Russell v. Jones,

101 Ala. 261, 13 South. 145. On demurrer a complaint failing to allege compliance is sufficient. American Button Hole Co. v. Moore, 2 Dak. 280, 8 N. W. 131; Nicoll v. Clark, 34 N. Y. Supp. 159. Having accepted the benefit of the contract, defendant is estopped to deny that plaintiff has complied with the law. La France F. E. Co. v. Town of Mt. Vernon, 9 Wash. 142, 37 Pac. 287; Rathbone v. Frost, 9 Wash. 162, 37 Pac. 298. If plaintiff had not complied, the only action that could be taken with respect to plaintiff's right to do business would be by the state. State v. Fidelity & C. Ins. Co., 39 Minn. 538, 41 N. W. 108; Northwestern M. L. Ins. Co. v. Brown, 36 Minn. 108, 31 N. W. 54; Baker v. Northwestern G. Loan Co., 36 Minn. 185, 30 N. W. 464; State M. F. Ins. Assn. v. Brinkley S. & H. Co., supra; Russell v. Jones, supra.

*H. Steenerson*, for respondent.

The complaint fails to state facts sufficient to constitute a cause of action. It fails to show compliance with G. S. 1894, § 3331. Railway Co. v. Fire Assn., 55 Ark. 163, 18 S. W. 43; Christian v. American F. L. M. Co., 92 Ala. 130, 7 South. 427; Boulware v. Davis, 90 Ala. 207, 8 South. 84. The contract is contrary to public policy and is void. The right of waiver is subject to the control of public policy, which cannot be set aside or contravened by any agreement or arrangement of the parties however expressed. 28 Am. & Eng. Enc. Law, 533, and authorities there cited. The bond covers only acts of fraud and dishonesty. A surety is not to be held beyond the plain terms of his contract. Tomlinson v. Simpson, 33 Minn. 443, 23 N. W. 864. See, also, Murfree, Official Bonds, § 80. The recital controls the condition and precludes a liability indicated by the latter, but inconsistent with the former. National Mech. Bankg. Assn. v. Conkling, 90 N. Y. 116.

MITCHELL, J. The plaintiff, a foreign corporation, is what is termed a "guaranty insurance company," engaged in the business of guarantying to employers the fidelity of their employés. This action was brought to recover money alleged to have been paid to the Red River Elevator Company, defendant's employer, upon a bond by which the plaintiff obligated itself to make good, and reimburse to the elevator company, such pecuniary loss as it might sustain by reason of the infidelity of the defendant as its receiving agent in one of its grain ele-

vators. The appeal is from an order sustaining a demurrer to the complaint on the ground that it did not state facts constituting a cause of action.

The material conditions of the bond, which is set out in the complaint, are as follows: "The company [the plaintiff] shall, * * * subject to the conditions and provisions herein contained, * * * make good and reimburse to the said employer, such pecuniary loss as may be sustained by the employer by reason of the fraud or dishonesty of any or either of the employés [of whom defendant was one] named upon said schedule or added thereto, as hereinafter provided, in connection with his duties as receiving agent or buyer: * * * Provided, * * * that the company shall be liable only for the acts of fraud or dishonesty on the part of the persons mentioned in the schedule, who act as receiving agents, for shortages in their grain accounts, as follows, viz.: There shall be deducted from the total amount of grain and dockage received by the receiving agent at said elevator or elevators screenings and dirt from such grain as has been cleaned at said elevator or elevators, together with the amounts of shipments based upon weights of grain and dockage at terminals—and if the result shows a deficit, and the shortage is not caused by the various exceptions agreed to, this proof of loss will be accepted as binding on the part of the company. In case where screenings and dirt are burned at an elevator, they shall be weighed before being burned, and the weight reported daily to the employer: provided, that the company shall not be liable for the grading of grain, loss by heating, drying, or leakage of cars, or other damage, shortages caused by defective weighing apparatus or appliance or for shortages in any elevator or elevators, caused by the failure of any of the parties mentioned in said schedule to take dockage enough to make good their weights for grain checks issued, as the employer hereby assumes the risks of its superintendents, traveling men, and officers in giving instructions to its receiving agents as to the amount necessary to take to make good the amount of dockage at terminal points, and the action of receiving agents in taking dockage, the loss by cleaning grain and the ordinary shrinkage arising from dust in handling of said grain in elevators. And it is further agreed that the company shall not be liable for errors or carelessness in weighing of grain, nor for thefts of grain by persons other than those covered by this bond, nor for robbery or thefts of money from the

persons so covered, where proofs of such errors, carelessness, thefts, or robbery are conclusive; as negligence is not covered by this bond."

The complaint alleges that defendant, in consideration of plaintiff's becoming a guarantor for him by executing this bond, agreed to indemnify it against any losses, damages, or expenses it might sustain or become liable for in consequence of executing the bond; also, that this bond was in the form requested by the defendant; also, that defendant further agreed "to admit the voucher or other proper evidence of such payment by plaintiff as conclusive evidence against himself as to the fact and extent of his liability to this plaintiff." It is further alleged that defendant, within the scope of his employment as receiving agent of plaintiff, issued tickets for, received, and took in, at one of the elevator company's elevators, a certain number of bushels of wheat and dockage, but, of the same, only delivered to the elevator company a certain less number of bushels at the termination of his employment; leaving nearly 1,000 bushels which he never delivered, although requested to do so. The complaint then states specifically the manner in which this shortage was ascertained and made to appear, which was the exact manner provided for in the bond. It then negatives specifically that this shortage was caused by any of the exceptions named in the bond. It is then alleged that the elevator company presented its claim for this shortage to the plaintiff; that the latter was compelled to pay the same, and now holds the elevator's voucher for the same, but that defendant refuses to indemnify the plaintiff for the money thus paid out in his behalf. Counsel for plaintiff asks us to pass upon numerous questions touching the construction of this bond; but as it is a novel contract, and its provisions prolix, somewhat obscure, and sometimes apparently contradictory, we deem it unwise, upon a demurrer, to decide much except what is necessary to determine whether a cause of action is stated. Hence we shall confine ourselves mainly to the specific objections made by defendant's counsel to the sufficiency of the complaint.

1. The first objection urged against the complaint is that it does not allege that the plaintiff had a license to do an insurance business in this state, as required by G. S. 1894, § 3331. Notwithstanding that there would seem to be some decisions holding otherwise, we are of opinion that the case is one where the maxim, "Omnia rite acta præsumuntur," is applicable. Noncompliance with the laws of this state

63 M.—12

will not be presumed, but, if it exists, must be set up in defense. Williams v. Cheney, 3 Gray, 215.

2. The second point urged is that a contract guarantying the honesty of employés is void as being against public policy; that it is the duty of all employers dealing with the general public to employ honest agents; that the effect of such a contract as set out in the complaint is to make it a matter of indifference to an elevator company whether it employs honest or dishonest agents to deal with the patrons of the elevator. There is nothing whatever in this objection. The same principle is involved in every bond exacted from a public officer or a private agent as security for the faithful performance of his duties. And it is wholly immaterial whether the guarantor is a private person, or an incorporated guaranty insurance company. The advantages of the latter over the former mode of suretyship, if properly conducted, are very apparent. 2 May, Ins. § 541.

3. The third objection is that the stipulation between the plaintiff and defendant that the voucher, or other evidence of payment by plaintiff to the elevator company, should be conclusive evidence against the defendant as to the fact and extent of his liability to the plaintiff, is void as being against public policy.

This question is not really involved in this appeal, but, as it is one which will necessarily arise at the very threshold of the trial of the action, it may properly be considered now. The right of a party to waive the protection of the law is subject to the control of public policy, which cannot be set aside or contravened by any arrangement or agreement of the parties, however expressed. Thus, an agreement to waive the defense of usury is void. So, also, according to the weight of authority, is an agreement, made at the time of contracting a debt, to waive the prospective right of exemption. The agreement under consideration is more than a mere enlargement of contractual rights, or the establishment of a rule of evidence. It provides that the plaintiff may, by his own ex parte acts, conclusively establish and determine the existence of his own cause of action. In short, he is made the supreme judge of his own case. The case is not at all analogous to the common provisions in building and construction contracts, by which the determination of some third person such as the architect or engineer, as to the

amount or character of the work, is made conclusive between the parties, in the absence of fraud or mistake. Nor is it at all analogous to a provision in an executory contract for the sale or manufacture of an article to the satisfaction of the buyer, where, if the article is declined, the parties are, in contemplation of law, left in statu quo. In the present case the attempt is to provide that, after the alleged cause of action has accrued, the plaintiff shall be the sole and exclusive judge of both its existence and extent. Such an agreement is clearly against public policy. If the provision had been that the voucher, or other evidence of payment, should be merely prima facie evidence of the fact and extent of defendant's liability,—thus merely shifting the burden of proof, but leaving the defendant at liberty to rebut this prima facie evidence,—although even then a somewhat drastic provision, we do not think that it could be held to contravene public policy. To that extent, we think this provision is valid, but, in so far as it assumes to make the voucher of payment by plaintiff conclusive of defendant's liability, it is void.

4. The fourth objection urged against the complaint is that, while the bond only covers acts of fraud and dishonesty, it contains no allegation that this shortage was caused by the fraud or dishonesty of the defendant.

Whoever drafted this bond used language very loosely, and employed a great many words to express, or else conceal, very few ideas. But after taking it by the four corners, and considering all its provisions, our construction is that the plaintiff was only bound to make good, and reimburse the elevator company for, loss sustained by reason of a shortage of grain caused by the actual fraud or dishonesty of the defendant. But the bond also provides how the existence and amount of a shortage shall be ascertained, and that, when thus ascertained, it shall be accepted as evidence that it was caused by the fraud or dishonesty of the defendant, and not by any of the various other causes, enumerated as exceptions, for which the plaintiff was not to be liable; in other words, that a shortage ascertained in the manner prescribed should be prima facie evidence of its existence, and that it was caused by defendant's fraud or dishonesty, thus casting the burden upon the plaintiff to rebut this prima facie case by proof. It is not bound to do this by affirm-

ative evidence showing the particular one of the causes, enumerated as exceptions, which produced the shortage, but may do it by negative evidence showing that it was not caused by the fraud or dishonesty of the defendant, and hence must have been produced by one or more of the excepted causes. This it may do by a fair preponderance of evidence as to any of the excepted causes, except errors or carelessness in weighing, and thefts by persons other than those covered by the bond, in which cases the proofs must be conclusive. The word "conclusive," in that connection, we think, must be construed as meaning so strong as to require a finding or verdict that the shortage resulted from the cause alleged. This may also be done by negative or circumstantial evidence. So much for the construction of the bond.

The bond having been executed at the request of the defendant, and in the form requested by him, it follows that his obligation to indemnify the plaintiff is coextensive with that of the plaintiff to reimburse the elevator company; also, that any provisions in the bond, as to proof of liability, binding on the plaintiff in favor of the elevator company, are equally binding on the defendant in an action brought by the plaintiff against him to recover indemnity for what it has paid in his behalf. Therefore it follows that the complaint alleges facts which, under the provisions of the bond, constitute a cause of action against the defendant; that is, if all the facts alleged are proved on the trial, it would follow, as a matter of law, that the plaintiff would be entitled to recover. That the facts alleged are, in one sense, merely evidentiary, and may be rebutted by other evidence, is not material, inasmuch as, by the agreement of the parties, they make out prima facie a cause of action, and if not rebutted they conclusively make it out. Otherwise expressed, under the contract of the parties, the facts alleged prove that the shortage was caused by defendant's fraud or dishonesty. Under these circumstances, an express and direct allegation that it was so caused was unnecessary. The complaint states a cause of action.

Order reversed.