8295

GUARANTEE COMPANY OF NORTH AMERICA v. CHARLES.

1. ARBITRATION.—A stipulation in a guaranty bond that obligor will indemnify a guaranty company for any loss, damage or expense it may sustain or become liable for in consequence of issuing its bond to guarantee the faithful performance by the son of obligor of his duties as agent of an express company, and "that the vouchers or other proper evidence showing payments by said guaranty company of any such loss, damage or expense shall be conclusive evidence except for fraud" of the amount of liability, is invalid as against public policy in ousting the Courts of jurisdiction in matters not involving personal fancy, taste, convenience or purpose.

2. REHEARING refused.

Before ERNEST GARY, J., Greenville, November term, 1910. Reversed.

Action by Guarantee Company of North America against John H. Charles, Sr. Defendant appeals on the following exceptions:

I. "The presiding Judge erred in admitting in evidence the statements, Exhibits 'A,' 'B,' 'C,' 'D,' 'E,' 'F' and 'G,' upon the ground that the same are copies, and that the originals are the best evidence thereof.

II. "The presiding Judge erred in admitting in evidence the statements, Exhibits 'A,' 'B,' 'C,' 'D,' 'E,' 'F' and 'G,' upon the ground that they are *ex parte* statements furnished by the express company to the plaintiff, and that the defendant should not be bound thereby.

III. "The presiding Judge erred in holding that the voucher or receipt signed by Southern Express Company showing a payment by the guarantee company to the express company of $424.40 on account of claims held by the express company against J. H. Charles, Jr., for defaults in his duty as messenger, was, under the defendant's contract of guaranty, conclusive evidence (except for fraud) of the fact and amount of his liability thereunder, and in directing a verdict for the plaintiff upon this ground. Specifications:

"(1) Said stipulation is unreasonable.

"(2) Said stipulation is contrary to public policy and therefore void.

"(3) Said stipulation has the effect of ousting the Courts of jurisdiction in determining the fact and amount of the alleged defaults of the messenger.

"(4) Such stipulation amounts to constituting the guaranty company the absolute arbitrator and Supreme Court in its own case, which is unreasonable, contrary to public policy and void.

"(5) Such stipulation amounts to the absolute submission to an arbitrator, before any controversy has arisen, all matters of dispute that may arise under a contract, and depriving the Courts of their supervisory control of such disputes, which is unreasonable, contrary to public policy and void.

"(6) Such stipulation amounts to the submission to one of the parties to a contract the final and absolute decision of questions arising under the contract, depriving the other party of his right to inquire into the reasonable care and honest judgment of such arbitrator; the object of the contract not being to gratify taste, serve personal convenience or satisfy individual preference.

IV. "The presiding Judge erred in holding that the contract of the defendant could not be impeached except for fraud; that there was no evidence of fraud; and in directing

a verdict for the plaintiff upon this ground. Specifications:

"(1) The defendant should have been allowed to show that the statements furnished to the guarantee company by the express company showing alleged defaults of the messenger were incorrect and unfounded in fact.

"(2) There was sufficient evidence of fraud, gross negligence and collusion to require the submission of this issue to the jury.

"(3) The defendant had the right to show that the statements and settlement between the guarantee company and the express company were not the result of reasonable care and honest judgment; that there was sufficient evidence of these facts to require the submission of this issue to the jury.

V. "The presiding Judge erred in not holding that the defendant was not liable for the suit brought upon his guaranty after J. H. Charles, Jr., attained his majority on November 29, 1908, for the reason that said contract of guaranty provides that 'when the above named party reaches mature age this obligation becomes cancelled.' "

*Messrs. Cothran, Dean & Cothran,* for appellant, cite: *The stipulation deprives defendant of a substantial right under the law:* 1 Green. Ev., sec. 15; 14y, 2a; 2 S. C. 150. *It is contrary to public policy:* 84 S. C. 256; 20 S. C. 437; 111 U. S. 242; 219 U. S. 219; 148 U. S. 172; 9 L. R. A. 501; 2 Ency. 570; 1 McM. 63; 35 Am. D. 239; 8 Am. St. R. 913; 127 U. S. 661; 87 N. E. 638; 70 S. E. 290; 30 L. R. A. 586; 79 N. W. 531; 183 Fed. 588; 5 H. of L. Cas. 827; 20 Wall. 445; 135 Mass. 216; 99 Fed. 787; 1 Strob. 344; 130 S. W. 924; 84 N. E. 966. *If valid it does not shut off inquiry into whether the guaranty company and the express company made a mistake:* 63 S. C. 290; 78 S. C. 200; 84 S. C. 299.

*Messrs. Haynesworth & Haynesworth,* contra, cite: *The provision is a reasonable and necessary one in contracts of*

*this character:* 30 So. 750. *Right of action lies against obligor for acts done by his son during his minority:* 60 S. S. 487; 40 S. C. 16; 2 Rich. 80; 2 Hill 512; Riley 1.

The opinion in this case was filed on July 30, but held up on petition for rehearing and for case of *Jones* v. *Enoree Power Company* until

August 12, 1912. The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY. The following statement appears in the record:

"This action was instituted in the Court of Common Pleas for Greenville county, on the 8th day of October, 1909. The plaintiff prays judgment for the sum of $424.40, with interest from December 2, 1908, that being the amount paid by the plaintiff to Southern Express Company, under a bond in which the plaintiff was surety, for the faithful performance of duty on the part of John H. Charles, Jr., a messenger employed by Southern Express Company. Before the said bond was executed, the plaintiff secured an obligation from John H. Charles, Sr., in the nature of a guaranty, dated May 22, 1906. The plaintiff brings this action against the defendant, John H. Charles, Sr., for the said sum, upon the obligation of said guaranty.

"The case was tried before Judge Ernest Gary, and a jury, at Greenville, November term, 1910. At the close of the testimony, the plaintiff's attorneys made a motion, that the Court direct a verdict in its favor, for the full amount claimed, upon the ground that the receipt of the plaintiff, for the money paid by it to Southern Express Company, on account of the alleged defaults of the messenger, John H. Charles, Jr., was conclusive of the fact and amount of such defaults, and could not be impeached by the defendant, except for fraud; and that there was no evidence of fraud. Whereupon the presiding Judge directed the jury to find a

verdict, in favor of the plaintiff, in the sum of $481.40, that being the amount claimed with interest; upon which verdict judgment has been duly entered, and from which the defendant appeals."

A copy of the bond, which is set out in the complaint (omitting the formal parts thereof) is as follows:

"May 25, 1906.

"Know all men by these presents, That I, J. H. Charles, of Greenville, S. C., in consideration of the issue of a bond of guarantee, by the Guarantee Company of North America for Southern Express Company, on behalf of my son, John H. Charles, Jr., not yet of age, hereby agree that I will protect and immediately indemnify said Guarantee Company of North America, against any and all loss, damage or expense it may sustain or become liable for, in consequence of such bond or renewal or extension thereof, hereby admitting that the vouchers or other proper evidence, showing payment by the guarantee company of any such loss, damage or expense, shall be conclusive evidence (except for fraud), against me and my estate, of the fact and amount of my liability hereunder, to said guarantee company. It being understood, that when the above named party reaches mature age, this obligation becomes cancelled."

The defendant in his answer alleges, "that any payment made by the plaintiff to Southern Express Company, on account of any alleged loss, sustained by reason of the misconduct of the said John Henry Charles, Jr., has been paid without justification, without settlement with the said John Henry Charles, Jr., voluntarily, when there was no defalcation or other wrongdoing, on the part of the said John Henry Charles, Jr., and in fraud of the defendant's rights in the premises.

"That John Henry Charles, Jr., attained his majority on the 29th of November, 1908."

The defendant appealed upon exceptions, which will be reported.

The question in the case is, whether there was error, on the part of his Honor, the presiding Judge, in ruling that the vouchers or other evidence, showing payment of loss by the plaintiff, alleged to have been sustained by the Southern Express Company, as the result of misconduct, on the part of John Henry Charles, Jr., was conclusive evidence (except for fraud) of the defendant's liability under his said bond.

While the bond upon its face, merely purports to prescribe a rule of evidence, to be applied upon the trial of the case by the Court, nevertheless, it is, in effect, an agreement to submit to the plaintiff as arbitrator, all issues, (except fraud) that might arise between it and the defendant, leaving the Court powerless, to do more than pass a formal order, confirming the award made by the plaintiff, as was done in this case, thus absolutely depriving the defendant of his right to be heard, upon the merits of the case.

There are two reasons why the direction of the verdict was erroneous.

In the first place, the terms of the bond showed an attempt to oust the Court of its jurisdiction, to try any fact upon which the plaintiff's cause of action depended,—fraud in this case being a defense.

In the case of *Percival* v. *Herbemont,* 1 McM. 59, the syllabus, which correctly states the question decided, is as follows: "The plaintiff and defendant entered into a special written agreement, to submit the matters in dispute between them, to counsel; but no particular counsel was named, or time when the matter was to be submitted—defendant agreeing to pay, according to the instructions of the counsel; and in default of their getting a decision, then the plaintiff was to file a bill in the court of equity, and the decree of that Court, was to be conformed to, by the defendant. This was held to be an agreement to arbitrate.

"An agreement to arbitrate, or a bond to submit to arbitration, may be the subject of a suit, when the damages

stipulated, or the penalty, will authorize a recovery; but such an agreement or bond, would not deprive either party of his remedy in the Courts, or oust them of their jurisdiction, in regard to the matter in dispute." This case is cited with approval, in *Smith* v. *Thomson,* 1 Strob. 344.

This is in accord with the general doctrine, which is thus stated in 2 Encyc. of Law 571: "Where the parties to a contract, enter into an absolute agreement, or covenant, that in case a dispute should arise under such contract, all matters in difference between them relating thereto, shall be submitted to arbitration, is void on grounds of public policy, because, to give effect to it, would be to oust the Courts of their jurisdiction." This question has undergone judicial investigation in *Jones* v. *Enoree Water Co., infra* 263.

In the second place, it would be against public policy, if the action of the plaintiff was not to be tested, by the rules of common sense and reason. The principle is thus stated in *Thompson* v. *Security Co.,* 63 S. C. 291, 41 S. E. 464:

"When the object of a contract is to gratify taste, serve personal convenience, or satisfy individual preference, the benefit which the promiser derives therefrom, is of a personal nature, and his pleasure, which he has in view in entering into the contract, consists in its performance to his satisfaction. The personal character of such a contract is an element entering into it, of which the promiser is bound to take notice. If the promisee was not allowed to be the sole arbiter, of the due performance of the agreement in such cases, he might be compelled to accept what, in his estimation, was of no value or benefit to himself, and which would have deterred him from entering into the contract. In other cases the reasonableness of the promisee's action, in determining the question, is the element entering into the contract, and a disregard of this element, is in the nature of a fraud on the rights of the promiser. It is bad faith and unfair dealing for a person to act unreasonably, in an ordi-

nary business transaction, when there is nothing in the contract of a personal nature. The action of the insurance company in the case under consideration, was not dependent upon taste or upon any fact of a personal nature, but solely upon the existence of a fact, in an ordinary business transaction, and it would be bad faith, for it to refuse to be governed by reason and common sense, in determining the existence of such fact."

There are special reasons, why these principles are applicable to the case under consideration. Not only was the amount, but the fact whether anything was due by the defendant, was to be determined by an interested party, and there was no provision in the contract, that the defendant should have the right to be heard.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded for a new trial.

MESSRS. JUSTICES WATTS *and* FRASER *did not hear this case.*

MR. JUSTICE WOODS. I concur in the result. The case stands entirely apart from the case of *Jones* v. *Enoree Power Company, infra* 263. There the contract was that the single issue of the amount of the damages arising from back water, caused by the raising of a dam, should be decided by a board of impartial arbitrators as a condition precedent to the right of action; and by the consensus of judicial authority such a contract is valid. Here the contract is that the guarantee company, one of the parties to the contract, should be the judge, not of a particular fact, but of the liability of the other party, and that its determination as to his liability should be conclusive. Such a contract is against public policy and invalid, because it is an attempt to substitute for the tribunals established by law a contract tribunal to determine, not some particular, antici-

pated issue of fact, but the issue of ultimate liability dependent on all the facts and the law. The authorities holding such an attempt futile are cited in *Jones* v. *Enoree Power Company.*

Even if this contract so limited the matter to be decided by the plaintiff that it would not be invalid as an effort to oust the Courts of jurisdiction, yet it is an attempt to make one of the parties the final judge in his own case, of a matter of ordinary business accounting as distinguished from matters of personal fancy, taste, convenience, or preference. At the most such a stipulation cannot be effective further than to make the conclusion of the party in whose favor it is made *prima facie* evidence of the fact of default. *Thompson* v. *Fidelity etc. Co.,* 63 S. C. 290, 41 S. E. 464; *Fidelity etc. Co.* v. *Eichhoff,* 63 Minn. 170, 65 N. W. 351, 56 Am. St. 464, 30 L. R. A. 586.

MR. JUSTICE HYDRICK *concurs.*

2    Petition for rehearing dismissed August 12, 1912.