# CASES

## ARGUED AND DETERMINED

### IN THE

# Supreme Court of South Dakota

WESTERN SURETY COMPANY, Appellant, v. HAYES et al., Respondents.

(177 N. W. 120.)

(File No. 4656. Opinion filed March 26, 1920.)

1. **Indemnity—Surety Bond to Bank Application for "Bond or Bonds" Specifying Sum and Promising to "Keep Indemnified" Surety Against Liability "At Any Time," Whether Indemnity Under One Bond Only.**

   Where, under an application of a state bank to a surety company for a surety bond stating "amount of bond required $6,000," and promising, in consideration thereof, to pay an annual premium, and "to indemnity and keep indemnified," the surety company from and against all liability, etc., "at any time," pursuant to which application the surety company executed its bond to the bank, and thereafter, without further application, executed to the bank another bond exactly like the first except as to date, and again, without further application, executed a third bond exactly like the first except re date, during successive years all bonds being approved under the statute by county commissioners, the bank subsequently becoming insolvent, the surety company, under the last bond executed and as a release therefrom, paid the county (pursuant to the bank guarantee act) a certain sum then owing from bank to county; held, that trial court's conclusion of law upon the facts that the indemnity contract secured the surety company for execution of one bond of $6,000, and was not given to secure a number of bonds, and that the first bond, having been fully complied with, sureties were not liable (on the indemnity contract) for the defalcation, was not erroneous; it being conceded that the bond or bonds applied for may not exceed $6,000; that the application is construable as leaving it optional with surety company to furnish the required $6,000 security in form of one or more bonds.

1—Vol. 43, S. D.

2. Same—Whether Surety's Liability to Counter Under Bank
   Guarantee Act a Continuing One, If So, Effect, Re Extent
   of Liability—Anticipatory Construction Re Bonds—Theoret-
   ical Ambiguity.

   Held, further, that if the surety's liability to the county on
   the first bond was a continuing one, then it became liable to
   the county to the extent of $18,000 on all three bonds; it
   being permissible to assume that surety, if sought to be held
   under a defalcation of $18,000, might admit liability in
   $6,000 on the third bond (all being sued on) and deny
   liability on first and second, on grounds that each bond
   was intended to cover a default occurring during its annual
   period, and that it could be plausibly contended that the said
   annual issuance of bonds created an ambiguity as to such
   liability, and that a like ambiguity did exist as to the bank's
   liability upon the indemnity contract.

3. Indemnity—Bank's Indemnity Re Surety Bond Under Bank
   Guarantee Act—Ambiguity in Indemnity Contract, How
   Construed, Re Party Benefited.

   The indemnity contract given by a state bank (under bank
   guarantee act) to a surety company in consideration of exe-
   cution of a surety bond to the bank, but whose terms were
   inserted for benefit of one of the parties, will be construed
   as having been inserted and worded by him, and, in case of
   ambiguity, will be construed against him.

Appeal from Circuit Court, Stanley County. Hon. JOHN F. HUGHES, Judge.

Action by Western Surety Company, a corporation, against John Hayes and others, to recover upon an indemnity bond given by The Citizens' State Bank of Fort Pierre to plaintiff. From a judgment for defendants, and from an order denying a new trial, plaintiff appeals. Affirmed.

*Kirby, Kirby & Kirby,* for Appellants.

*Gaffey, Stephens & McNamee,* and *Miller & Mitchell,* for Respondents.

(1) To point one of the opinion, Appellant cited: U. S. of America v. Bayly, 41 L. R. A. (N. S.) 422; DeJernette v. Fidelity & C. Company, 33 S. W. 828.

(3) To point three, Respondent cited: George A. Hornel & Co. v. American Bonding Company, 33 L. R. A. (N. S.). 513: Note.

SMITH, J. Prior to the 29th day of November, 1910, the Citizens' State Bank of Ft. Pierre was designated a depository

of county funds of Stanley county, pursuant to the provisions of article 6, c. 5, Pol. Code 1903, as amended by chapter 125, Laws 1903. Said bank, for the purpose of furnishing security for the funds to be deposited, made application to appellant Western Surety Company for a bond, which application was also signed by respondents. This application, so far as material to the question presented upon this appeal, was as follows:

"The undersigned hereby request the Western Surety Company * * * to become surety or bail for and furnish such bond or bonds, undertaking or undertakings, as may be required by or on behalf of, the following named applicant, to wit: * * * Citizens' State Bank of Ft. Pierre; * * * amount of bond required, $6,000, * * * to Stanley county, South Dakota, conditioned for the payment, return, or handling all moneys by the Citizens' State Bank of Ft. Pierre, South Dakota, that may be delivered or deposited for care with the said bank. * * * The undersigned, * * * in consideration of the Western Surety Company * * * agreeing to * * * execute * * * the bond or undertaking herein applied for, do for value received hereby covenant, promise, and agree to pay the Western Surety Company an annual premium of $————, * * * and we each jointly and severally * * * agree to indemnity and keep indemnified the said company * * * from and against any liability and all loss, cost, charges, suits, damages, counsel fees and expenses of whatever kind or nature which said company * * * shall or may for any cause, at any time, sustain or incur for, or by reason or in consequence of said company * * * having become bail or security or entering into or becoming surety on such bond or bonds or undertaking or undertakings."

Pursuant to said application and in compliance therewith, appellant surety company executed and delivered its bond conditioned as required by law, dated December 20, 1910, which bond was filed with the county auditor on December 23, 1910, approved and accepted by the board of county commissioners on January 14, 1911. Thereafter on January 8, 1912, the Western Surety Company, without any further or other application, executed and delivered another bond or undertaking, exactly like the first, except as to date, which bond was accepted and

approved by the board of county commissioners on February 21, 1912, and again on January 24, 1913, without any further or other application, the Western Surety Company executed and delivered a third bond or undertaking exactly like the first except as to date, which bond was accepted and approved by the board of county commissioners on February 28, 1913.

The trial court found that each of said bonds was executed and delivered pursuant to orders by the board of county commissioners, made in each of said year's respectively, designating said bank as a depository of county funds; that the conditions of the first bond were fulfilled by said bank, but that in the months of March and April, 1913, said bank wholly failed and neglected to comply with its duties as such depository and on April 30, 1913, became insolvent, closed its doors, and ceased to conduct a banking business; that upon the designation of the said bank as a public depository of county funds in 1910, the county treasurer deposited and continued to deposit county funds in said bank until the time of its failure; that at the time said bank became insolvent it was indebted to Stanley county on account of money so deposited in the sum of $1,756.66, and that while said bank was so insolvent, and had ceased to do business, the Western Surety Company did, under the bond last above described [the bond of January 24, 1913] and as a release therefrom, pay to said Stanley county the sum of $1,756.66, the amount then due and owing from said bank to said county.

The Western Surety Company thereafter instituted this action against respondents upon the contract of indemnity contained in the application above quoted. The trial court entered findings of fact in accordance with the foregoing statement of facts, and as a conclusion of law found that the indemnity contract contained in the application above set forth—
"was executed and delivered to the plaintiff to secure it for the execution of one bond of $5,000, specified and required in said [application] and was not given to secure a number of bonds, and that the bond [first given] having been fully complied with by the defendant bank, and there being no default in any of

the conditions of the same * * * the defendants * * * are not liable [upon the indemnity contract] for the defalcation."

This appeal is from the judgment in favor of respondents, and the only assignment of error is that the trial court erred in its conclusion of law. The only question presented by this appeal is whether the trial court erred in its construction of the contract of indemnity contained in the application.

Appellant's contention in substance is that the application was a request to appellant to furnish as many bonds as Stanley county might require to safeguard deposits of county funds in the Citizens' State Bank. This contention appears to be founded upon the words used in the application, viz.:

"To furnish such bond or bonds as may be required by or on behalf of * * * the applicant," Citizens' State Bank.

[1] But appellant concedes that the bond or bonds applied for by respondents may not exceed $6,000, the sum named in the application, and in this we think appellant is correct. The application we think may be construed to leave it optional with appellant to furnish the required $6,000 security, in the form of one or more bonds. It is perfectly clear that respondents' liability on the contract of indemnity would be coextensive with the liability of appellant to Stanley county on the bond or bonds intended or contemplated in the application. Fidelity Co. v. Eickoff, 63 Minn. 170, 65 N. W. 351, 30 L. R. A. 586, 56 Am. St. Rep. 466.

[2, 3] Appellant suggests that its liability to Stanley county on the first bond was a continuing one. If this be true, it certainly became liable to Stanley county to the extent of $18,000 on all three bonds, which are identical in form and substance. Appellant elected to issue bonds annually, each in the amount of $6,000, with premium payable annually on each bond. Suppose a defalcation of $18,000 had occurred during the third annual period, and Stanley county were seeking to hold appellant liable for the whole amount in an action founded upon the three bonds. Might we not anticipate that appellant, while admitting liability to the extent of $6,000 on the third bond, would deny liability on the first and second, on the ground that each bond was intended to cover a default occurring during its annual period.

In this connection we may note that the trial court found as a fact that appellant paid to Stanley county the amount of the defalcation as an express release from liability on the third bond, which act may be interpreted inferentially as a concession, by both the bank and appellant, of nonliability on the preceding annual bonds. It could be plausibly contended, at least, that the annual issuance of bonds created an ambiguity as to such liability, and a like abmiguity would exist as to the liability of respondents upon the contract of indemnity. The indemnity contract was for the benefit of appellant. In such case the rule laid down in 13 C. J. 546, § 516, is that:

"Terms of a contract which appear on their face to be inserted for the benefit of one of the parties will be considered as having been inserted and worded by him, and therefore in case of ambiguity will be construed against him."

See case note, 8 L. R. A. (N. S.) 1140.

We are of the view that the application made by respondents was for a "bond or bonds" in the amount of $6,000 as a single transaction, and not an application for an unlimited series of annual bonds.

It follows that the trial court did not err in its conclusion of law, and the judgment is therefore affirmed.