THOMPSON v. SECURITY TRUST & LIFE INS. CO.

1. OPEN AND REPLY—PRACTICE.—A defendant is not entitled to open
   and reply unless he admits in his answer the plaintiff's cause of
   action and sets up an affirmative defense.
2. INSURANCE—EVIDENCE.—An AFFIDAVIT in another case stating the
   physical condition of insured made before application for insurance,
   is not admissible for defendant in a suit against it by beneficiary
   to show condition of deceased at that time.
3. EXCEPTIONS alleging error in modifying or qualifying requests with-
   out stating particulars, are too general.
4. CONTRACTS—INSURANCE.—Where an insurance company reserves to
   itself the right to decide if evidence of the existence of a contro-
   verted fact is satisfactory, the Court will enquire if it acts reason-
   ably or capriciously in coming to its conclusion, but will not do
   so in a contract to gratify taste, serve personal convenience, or sat-
   isfy individual preference. *Bethea* v. *R. R.,* 26 S. C., 91, *explained.*
5. INSURANCE.—Under the terms of this policy it was not to become
   void unless there was a failure on part of insured to furnish the
   evidence demanded, but not as soon as demand therefor was made.
6. APPEAL.—Where Judge makes mistake in stating issues raised by
   the pleadings, his attention should be called to it at the time, if
   desired to be used as an exception on appeal.
7. CHARGE.—Party cannot complain of a charge in his favor.

Before KLUGH, J., Spartanburg, March term, 1901.   Af-
firmed.

Action by Jessie M. Thompson against Security Trust and
Life Insurance Co. of Philadelphia.   From judgment for
plaintiff, defendant appeals.

*Messrs. Mower & Bynum* and *R. K. Carson,* for appellant.
The former cites: *Defendant entitled to open and reply:* 35
S. C., 165, 178; 50 S. C., 36; 39 S. C., 165; 43 S. C., 26.
*Affidavit as to state of health should have been admitted:* 35
L. R. A., 272; 69 N. Y., 256; 50 L. R. A., 777; 8 Wall, 397;
31 Am. R., 631; 3 Ency., 2 ed., 10-18-20.   *Error to qualify,
modify or restrict the express terms of the contract:* Bishop
on Con., sec. 379; 42 L. R. A., 273; 35 L. R. A., 643; 54 S.

C., 371; 2 Cromp. & J., 244; 136 U. S., 287. *As to satisfaction of:* 26 S. C., 91; 36 Fed. R., 417; Beach on Mod. Con., sec. 105.

*Messrs. D. E. Hydrick* and *Stanyarne Wilson,* contra, cite: *Defendant not entitled to open and reply:* 35 S. C., 172; 50 S. C., 36; 4 Ency. P. & P., 628; 11 *Id.,* 411-13; 43 S. C., 26, 14; 96 U. S., 89; 51 S. C., 543; 28 S. C., 438; 29 S. C., 579; Code, 183. *Affidavit properly excluded:* 29 S. C., 580; 50 L. R. A., 777; 8 Wall., 404; 31 Am. R., 631; Bliss on Life Ins., 631-4. *No error in construing contract to mean that the evidence furnished by the parties should be such as in reason, justice and common sense would be acceptable:* 2 Bosw., 381; 76 N. Y., 119; 47 N. Y., 475; 54 Am. R., 709; 22 Am. St. R., 839; 49 Vt., 348; 43 Vt., 528; 50 Mich., 570; 65 Md., 198; 149 Mass., 284; 101 E. C. L., 782; 15 Am. R., 398; 14 *Id.,* 422; 3 Ency., 2 ed., 123; 16 Ency., 870.

March 31, 1902. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action on a policy of insurance on the life of W. W. Thompson, who died on the 8th of August, 1899. The policy was issued on the 29th of December, 1898, and this action was commenced on the day of November, 1899. The jury rendered a verdict in favor of the plaintiff for the amount of the policy.

The appellant's first exception is as follows: "I. Because his Honor erred in refusing to allow the defendant the opening and reply." The complaint alleged that the defendant, by its authorized agent, Elliott Estes, issued the said policy of insurance. The defendant, in its answer to the complaint, denied the agency of Elliott Estes, and also denied several other allegations of the complaint. The rule for determining who is entitled to the opening and reply is thus stated in *Addison* v. *Duncan,* 35 S. C., 165: "The true test is, who would be entitled to a verdict, if the

case is submitted to the jury simply upon the pleadings, without evidence being adduced by either side? If the plaintiff, then, unquestionably, the defendant being the actor, would have the right to open and reply." The rule is affirmed in *Beckham* v. *Railway Company,* 50 S. C., 25, in which the Court says: "The true rule in the cases where defendant acquires the right to open and reply is well stated in the opinion of Mr. Chief Justice McIver, in *Addison* v. *Duncan,* 35 S. C., 165, to exist in those cases where the defendant by his pleadings admits the plaintiff's cause of action as stated in the complaint, and relies solely upon an affirmative defense, based upon the facts stated in the answer; so that without evidence by defendant, the plaintiff would be entitled on the pleadings to a verdict." It is evident that it was not the intention of the defendant to admit the plaintiff's cause of action and to rely solely upon the defenses set up in the answer, otherwise it would not have inserted the carefully prepared denials in its answer to the complaint. The denial that Elliott Estes was the agent of the defendant was, in effect, a denial that the defendant entered into the contract as set forth in the complaint, and while there is an admission in the answer that the defendant insured the life of W. W. Thompson, it has no just ground to complain that the Court by its ruling cast upon the plaintiff the burden of proving those allegations of the complaint that were denied by the answer.

The second exception is as follows: "II. Because his Honor erred in refusing to admit in evidence the affidavit of W. W. Thompson, made May the 8th, 1898, in suit of Jesse M. Thompson *v.* C. P. & A. E. Brown, in which deponent said, 'that deponent has been for a year and is now in frail health forbidding most of the time attention to business." The case of *Dial* v. *Life Association,* 29 S. C., 560, shows that this exception cannot be sustained.

The third, fourth, fifth, sixth and seventh exceptions assign as error that his Honor, the presiding Judge, should

have charged the defendant's requests therein set forth without qualification or modification. They fail to specify wherein the qualification or modification was erroneous and are, therefore, too general to be considered.

The eighth exception, however, specifies the particular in which it is alleged the qualifications and modifications were erroneous. The eighth exception is as follows:

"VIII. Because his Honor erred in charging the jury: 'Now all those requests to charge from the eighth through twelfth, are based upon the contract set out in the complaint—that is, the terms of that contract which the Court has already read to you, and they are sound propositions of law, provided we bear in mind that every contract which the law takes cognizance of and enforces must be a reasonable contract. Parties may bind themselves to unreasonable things; they may make hard contracts and be bound by them or be estopped from asserting rights to the contrary of such contracts, but where persons enter into a contract, no matter what the terms may be, whether they are hard or not, when the contract comes to be construed by the Court, it will always construe the contract to be a contract made between reasonable beings, made in good faith on both sides, and upon the grounds of reason and common sense and justice, and will hold parties bound by the terms of their contract within the limitations of common sense and reason and justice. The Court will never construe any contract to be against good conscience, no matter what the stipulations of the contract may be; and if an insurance company reserves to itself the right to allege that there is something improper in the contract and reserves to itself the right to avoid the contract because of such allegation, then the allegation must be made; and until the allegation is made, the contract stands as a valid, binding contract upon the insurance company. Well, if the company goes a step further, and not only provides that it must make such an allegation, that there is something improper, some fraud

or concealment or untruth, but that the other party shall be notified that defendant does allege such a failure in the contract, then, until such notice is given, the contract is still a binding contract upon the insurance company. It cannot, if those be the stipulations of the contract, simply annul the policy of insurance without giving notice; and if it further provides that the other party may have a reasonable time within which to file evidence that there is nothing improper in the contract, then the contract will be a binding, valid contract until such reasonable time is given the other party to file such evidence; and if the insurance company further provides in its policy that the evidence furnished by the other party must be satisfactory to it, the insurance company, then the law will hold that the insurance company is going to determine the question of whether the evidence is satisfactory or not, by the same principle which would govern any reasonable or ordinary person acting honestly and justly, and in accordance with the principles of reason and common sense; and if the evidence should be furnished by the other party as required, and it should be such as a person of ordinary reason and honesty and justice and common sense would consider satisfactory, then the insurance company will be held bound to accept such evidence, whether, as a matter of fact, it is accepted or not, when the matter comes to be investigated and passed upon by a court; and so in this case, if you should find that the insurance company did make all these stipulations in its contract, that the parties concerned, the insured and this plaintiff here, did furnish evidence, it must be for you to say whether that evidence was such as would be satisfactory to a person of ordinary common sense and honesty and justice and reason. If you conclude that it would be, then the insurance company cannot avoid its contract upon the ground that it does not so regard such evidence as satisfactory. If you conclude that the evidence furnished would not be satisfactory to a person of ordinary reason and justice and honesty and common sense, then the insurance company would not be bound to accept

such evidence, and the contract would, therefore, be void so as to relieve the company from the obligation upon it; and subject to those principles, I charge you these propositions of law as I have read them to you.' Erred in the following particulars: A. In thereby modifying and qualifying the eighth, ninth, tenth, eleventh and twelfth requests to charge of the defendants.   B. In making the reasonableness of the contract the test of its valadity and binding effect between the parties thereto.   C. In failing to give full effect to the express terms of the contract under consideration.   D. In holding that, under the contract involved in this case, notice must be given of the cancellation of the policy, when he should have held, under the express terms of the contract, that when notice was given thereunder that it was alleged that some of the statements in the application were other than true and complete, and demand was made for evidence of the truthfulness of said statements, then the policy of insurance became *ipso facto* null and void, and would remain so until evidence of the truthfulness of said statements, satisfactory to the company, should be filed with and approved by the company.   E. In holding that the contract of insurance under consideration would continue of force after such notice and demand until a reasonable time had elapsed for the filing of evidence of the truthfulness of the assailed statements.   F. In holding that the insurance company was bound under this contract to allow a reasonable time for filing evidence of the truthfulness of the assailed statements, and that until such reasonable time had elapsed, the company would remain liable on the policy, and have the same to pay in case the insured died in the meantime.   G. In holding that any action of the insurance company under this contract in rejecting or refusing to approve evidence submitted to it, would be subject to review in an action on the policy.   H. In holding that it was for 'you' (the jury) 'to say whether that evidence was such as would be satisfactory to a person of ordinary common sense and honesty and justice and reason; if you conclude that it would be, then the insurance company

cannot avoid its contract upon the ground that it does not so regard such evidence as satisfactory. If you conclude that the evidence furnished would not be satisfactory to a person of ordinary reason and justice and honesty and common sense, then the insurance company would not be bound to accept such evidence, and the contract would, therefore, be void, so as to relieve the company from the obligation upon it;' when by the terms of the contract the company was exclusively vested with the right to determine this question. I. In holding that if the insurance company did not approve evidence submitted for reinstatement of policy under the contract, such action was not final and conclusive; and that if the jury found that the evidence submitted ought to have been approved by the company, then the policy would remain of force." The application for insurance contains the following: "I hereby agree for myself and all parties who may have an interest hereunder, that all the foregoing statements and answers are material and warranted to be true and complete, and that no other information, statement or answer than is therein contained, whether known to, made by or given to any person, shall ever be construed as forming part of the contract of insurance issued upon this agreement; and I further agree that if there be in any of the above statements or answers, any fraud, untruth, evasion or concealment of facts, whether material or not, any policy granted upon this application shall be *ipso facto* null and void, and all payments made thereon shall be forfeited to the company. But nothing herein contained shall be held to prevent the company from introducing any information as evidence of fraud, untruth, evasion or concealment of facts. That if any of said statements or answers as recorded above, whether written in my own hand or not, are alleged to be other than true or complete, and the parties then in interest fail when called upon to furnish to the company evidence satisfactory to it to the contrary, then the policy of insurance shall be *ipso facto* null and void until said evidence as aforesaid is filed with and approved by the company; and said policy shall be sur-

rendered to the company upon payment by it of the reserve to the credit of said policy on the books of the company. That in any distribution of surplus, the determination by the company of the amount to be apportioned to any policyholder is hereby ratified and accepted. That no insurance shall be in force until the delivery of the policy to and the payment of the first premium by the party whose life is insured while in good health. That any physician who has attended or may hereafter attend me professionally or otherwise, is hereby authorized and requested to give full information of any knowledge acquired thereby, any statute to the contrary being hereby expressly waived. I also warrant and agree that I will not die by any act of my own, whether sane or insane, within the period of three years from this date."

The answer does not set forth the fact nor is there any testimony to the effect that the insurance company offered to return either the premium of insurance or the reserve to the credit of said policy on the books of the company, after it had knowledge of the alleged bad health of W. W. Thompson. It is well settled in this State that a party cannot complain of fraud in a transaction, when with knowledge of the fraud he still retains the benefits which he derived from the transaction. *Levister* v. *Ry. Co.,* 56 S. C., 508; *Riggs* v. *Association,* 61 S. C., 448. As this objection, however, was not urged upon the trial on the Circuit, we will decide the questions presented by the exception.

The authorities upon the question whether under an agreement that an act shall be done in a manner satisfactory to the promisee, he shall be the sole arbiter of the performance according to the agreement, with inquiry as to his decision being made arbitrarily and capriciously, are not in accord, as will be seen by reference to the notes on pages 714 and 715 of 21 Enc. of Law (1st ed.); the notes to the case of *Duplex Safety Boiler Co.* v. *Garden,* reported in 54 Am. Rep., 709; and the cases cited by the attorneys in this appeal. In a note stating the general doctrine, on page 714 of 21 Enc.

of Law (1st ed.), it is said: "In *Gray* v. *Alabama Nat. Bank,* 10 N. Y. Supp., 5, upon the construction of a contract to make steel plate bank drafts, 'a satisfactory design' to be furnished the purchaser, it was held that the purchaser might reject the work without assigning any reason for his dissatisfaction. The Court, by McAdams, C. J., said: 'There is no doubt of the general proposition that where one party agrees to do a thing to the satisfaction of another, and the excellence of the work is a matter of taste—such, for instance, as a portrait, bust, suit of clothes, dramatic play or a particular piece of furniture—the employer may reject it without assigning any reason for his dissatisfaction. In such a case the law cannot relieve against the folly of the employee, by inquiring whether the dissatisfaction of the employer was based upon reasonable grounds or not. It is even doubtful whether it can inquire into the good faith of the employer's decision * * * Parties must stand to their contract as they make it; and if one party agrees to furnish an article that is satisfactory to the other, he constitutes the latter the sole arbiter of his own satisfaction. If, however, the task to be performed does not involve matter of taste, fancy or judgment, but of common experience, such as an ordinary job of mechanical work or the quality of material, a different rule applies, and in such cases the law will say what in reason ought to satisfy a contracting party, does satisfy him." The Court, in the case of *Duplex Safety Boiler Co.* v. *Garden,* 101 N. Y., 387, after deciding that an unfounded allegation of dissatisfaction was no defense to an action to recover the amount due for altering boilers, when the price was to be paid as soon as the defendant was "satisfied that the boilers as changed are a success," uses this language: "Another rule has prevailed, where the object of a contract was to gratify taste, serve personal convenience or satisfy individual preference. In either of these cases the person for whom the article is made or the work done may properly determine for himself—if the other party so agrees— whether it shall be accepted." The distinction is based on

sound principles.   When the object of a contract is to grat-
ify taste, serve personal convenience or satisfy individual
preference, the benefit which the promisee derives therefrom
is of a personal nature, and his pleasure, which he has in
view in entering into the contract, consists in its performance
to his satisfaction.   The personal character of such a con-
tract is an element entering into it of which the promisor is
bound to take notice.   If the promisee was not allowed to be
the sole arbiter of the one performance of the agreement in
such cases, he might be compelled to accept, what in his esti-
mation was of no value or benefit to himself and which would
have deterred him from entering into the contract.   In other
cases the reasonableness of the promisee's action in determin-
ing the question is the element entering into the contract,
and a disregard of this element is in the nature of a fraud on
the rights of the promisor.   It is bad faith and unfair deal-
ing for a person to act unreasonably in an ordinary business
transaction when there is nothing in the contract of a per-
sonal nature.   The action of the insurance company in the
case under consideration was not dependent upon taste or
upon any fact of a personal nature, but solely upon the exist-
ence of a fact in an ordinary business transaction, and it
would be bad faith for it to refuse to be governed by reason
and common sense in determining the existence of such fact.
There are expressions in the case of *Bethea* v. *R. R. Co.*, 26
S. C., 91, which would seem to indicate that this Court had
announced a doctrine at variance with the foregoing views,
but the principles here stated were not necessarily involved
in that case, as there were other grounds upon which the
Court rested its decision.

The ninth exception is as follows: "IX. Because his
Honor erred in refusing to charge, as requested by the de-
fendant, 'That if the jury find that the contract set out in the
eighth paragraph of the answer was made between
William Waddy Thompson and the defendant com-
pany; that if the jury further find that the policy sued
on herein was issued upon the said application and contract,

and that the statements and warranties in said application were made a part of the policy; that if the jury further find that the defendant company within two years after the issue and delivery of the policy, pursuant to the terms of said agreement or contract set out in the eighth paragraph of the answer, gave the parties in interest under the policy the notice and made the demand upon them set out in the ninth paragraph of the answer, then I charge you, as a matter of law, that the policy became *ipso facto* null and void until the evidence called for by the defendant in said notice and demand was filed with and approved by the defendant company; and that until such evidence was filed with and approved by the defendant company, no recovery could be had on the policy by any of the parties in interest under the policy.' " Waiving the objection to this exception, that it fails to specify the particulars in which his Honor erred in refusing to charge the request, it cannot be sustained. By reference to the agreement forming a part of the application hereinbefore mentioned, it will be seen that the request was contrary to the agreement. Under the terms of the agreement, the policy was not to become null and void unless there was a failure to furnish the evidence therein mentioned, while the request to charge was to the effect that the policy became null and void as soon as the company gave the notice and made the demand mentioned in the request.

The tenth exception is as follows: "X. Because his Honor erred in refusing to charge said last mentioned request on the ground stated in his charge, viz: 'The remaining request which the defendant has submitted does not fully state the terms of the policy and, therefore, it forms no foundation sufficient for the construction of the contract in it, and it is, therefore, refused.' " This exception is disposed of by what was said in considering the ninth exception.

The eleventh exception is as follows: "XI. Because his Honor erred in charging the jury, as requested by the plaintiff in her second request to charge, 'That under the terms of the policy contract herein sued on, the defendant could

not cancel it upon allegations of the falsity of any statement, representation, warranty or answer contained in the application, without giving the insured or beneficiary a reasonable opportunity to furnish satisfactory proof of the truth of such statement, representation, warranty or answer; and it is a question of fact for the jury whether such reasonable opportunity was given, and whether satisfactory proof was furnished in compliance with the demand of the defendant company, if demand was made for such proof.' "    Waiving the objection that the exception fails to specify in what particulars the charge was erroneous, this Court is satisfied that the propositions of law therein set forth are sound and in accordance with the views hereinbefore expressed.

The twelfth exception is as follows: "XII. Because his Honor erred in (practically) confining the attention of the jury in consideration of the defenses set up in the answer to those set up in the tenth and eleventh paragraphs of the answer, to the exclusion of that set up in the eighth and ninth paragraphs." If his Honor made a mistake in stating the issues presented by the pleadings, it was the duty of counsel to call his attention to the mistake, in case they desired to make such error the basis of an appeal.

The thirteenth exception is as follows: "XIII. Because his Honor erred in charging the jury that the death of the insured and the non-payment of the policy were in issue or were disputed facts in the case." While the plaintiff might have had cause to complain of this charge, the defendant certainly did not, as the ruling was in favor of the defendant.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.