1987

Joseph S. MENDELSOHN, Respondent v.
Anthony M. WHITFIELD, Appellant.

(430 S.E. (2d) 524)

Court of Appeals

*Joseph B. Bergen* and *Frederick S. Bergen,* Savannah, GA, and *William B. Harvey, III,* Beaufort, *for appellant.*

*Robert H. Hood,* Charleston, *for respondent.*

Submitted Jan. 18, 1993; Decided April 5, 1993.

Reh. Den. June 10, 1993.

BELL, Judge:

This is an action in contract for collection of an attorney's fee. Joseph S. Mendelsohn, a lawyer practicing in Charleston, South Carolina, sued Anthony M. Whitfield, a former client, alleging Whitfield owed him a balance of $2766.15 in attorney's fees for representing him in a divorce action. Whitfield answered, denying he owed Mendelsohn any attorney's fees, because Mendelsohn negligently represented him and because Mendelsohn provided legal services for which he did not retain him and which he did not need. Whitfield also filed a counterclaim for professional malpractice, alleging Mendelsohn did not properly represent him in the divorce action. Whitfield later amended his pleadings to allege claims for negligence, breach of contract, conversion, fraud, and conspiracy. He sought actual and punitive damages. Mendelsohn replied, denying the counterclaims.

The case was tried to a jury. The trial judge directed a verdict for Mendelsohn on fraud, conspiracy, and punitive dam-

ages. He submitted the causes of action relating to malpractice and conversion to the jury. They returned verdicts for Mendelsohn on his claim for attorney's fees and against Whitfield on the counterclaims. Whitfield appeals on numerous grounds. We affirm.

## I.

Whitfield asserts the court abused its discretion in denying his motion to continue the trial. The grounds for the motion were: (1) Whitfield had been discharged from the hospital two weeks earlier and was "indisposed" to prepare for and attend trial because he was recuperating from his illness; (2) a material expert witness would be unable to appear at trial; and (3) Whitfield's attorneys needed more time to prepare the case. The case had been pending over four years by the time of trial. From as early as March, 1988, Whitfield had been repeatedly notified by written order of court that the case would not be delayed any longer because of his failure to retain an attorney. Whitfield did not retain his trial counsel until November 14, 1990. He showed no good cause for neglecting to retain trial counsel much earlier. When they accepted the case, his retained lawyers knew or ought to have known the case had been ordered for trial on November 26, 1990. Whitfield himself claimed to have spent over 3000 hours preparing his case and to have prepared previously for trial at least five times. He appeared at and actively participated in the trial. So did his "unavailable" expert witness. His lawyers thoroughly and vigorously tried the case. We hold the court did not abuse its discretion in denying the motion for a continuance. *See Newman v. Old West, Inc.*, 286 S.C. 394, 334 S.E. (2d) 275 (1985) (denial of motion for continuance will not be reversed on appeal unless appellant shows a clear abuse of discretion).

## II.

Whitfield also contends the trial judge abused his discretion by not allowing him to make the opening and closing arguments to the jury. He asserts he was entitled to open and close pursuant to Rules 21 and 43(j), SCRCP. The argument is manifestly without merit.

Rule 21 deals with situations in which the absence of necessary parties or the misjoinder of parties in the action would warrant dismissing the suit. In this case, the parties before the court were proper and no one ever argued it should be dismissed for defect of parties. Rule 21 is irrelevant.

Under Rule 43(j), Mendelsohn, the plaintiff, had the right to open and close. He did not, as Whitfield's argument suggests, lose this right when Whitfield counterclaimed in the action. *See Reliance Varnish Co. v. Mulllins Lumber Co.*, 213 S.C. 84, 48 S.E. (2d) 653 (1948). When the defendant counterclaims he is only entitled to open and close on the issues raised by the counterclaims, not on the whole case. *See Id.*

Similarly, Whitfield did not come within the exception that allows a defendant admitting the plaintiff's claim to open and close. *See* Rule 43(j), SCRCP; *Thompson v. Security Trust & Life Insurance Co.*, 63 S.C. 290, 41 S.E. 464 (1902). Whitfield did not admit Mendelsohn's claim. On the contrary, in his amended answer, he alleged Mendelsohn failed to state a cause of action, entered a qualified general denial, and specifically denied Mendelsohn was due any payment for legal services. This placed the burden of proving the claim on Mendelsohn. Thus, Mendelsohn was entitled to open and close. *See Barber v. Citizens & Southern National Bank*, 268 S.C. 16, 231 S.E. (2d) 295 (1977); *Williams v. The South Carolina National Bank*, 284 S.C. 346, 326 S.E. (2d) 187 (Ct. App. 1985) (general denial puts claim in issue and places burden of proving the claim on the plaintiff).

### III.

In a series of arguments, Whitfield next asserts the judge erroneously excluded evidence proving the reason Mendelsohn sued him for attorney's fees was to discourage or bar him from bringing a malpractice action for mishandling the divorce case. Whitfield made no claim against Mendelsohn for abuse of process; and Mendelsohn's motive for suing, even if it were proven, was irrelevant to the merits of the claims the parties did raise against each other. Because the issue of motive was irrelevant to the merits of the claims

presented, it follows that evidence attempting to prove motive was also irrelevant and inadmissible. Therefore, the judge properly refused to admit the evidence. *See Scott by McClure v. Fruehauf Corp.*, 302 S.C. 364, 396 S.E. (2d) 354 (1990).

## IV.

Whitfield next asserts the judge committed reversible error by granting Mendelsohn a directed verdict on the counterclaims for fraud and conspiracy.

## A.

Arguing that fraud consists of any act characterized by dishonesty in fact, unfair dealing, or unlawful appropriation of another's property by design,[1] Whitfield focuses on evidence of four particulars which, in his view, required submitting the issue of fraud to the jury. First, he argues, Mendelsohn, without his authorization, applied $216 from a client escrow account towards his attorney's fee in the divorce action. Second, Mendelsohn, without authority, agreed to a temporary order in the divorce action awarding child custody to his former wife until the final hearing. Third, Mendelsohn failed to call witnesses in the divorce case to support Whitfield's claim for child custody. Fourth, Mendelsohn did not perfect an appeal in the divorce case after telling Whitfield his appeal rights had been protected.

---

[1] Whitfield relies on *Harper v. Ethridge*, 290 S.C. 112, 348 S.E. (2d) 374 (Ct. App. 1986), for this proposition. *Harper* involved a claim for breach of contract accompanied by a fraudulent act, not fraud. We specifically stated in that case: "The action for breach of contract accompanied by a fraudulent act is not based on the same elements as the action in tort for fraud and deceit." 290 S.C. at 118, 348 S.E. (2d) at 378. Whitfield neither pleaded nor proved a cause of action for breach of contract accompanied by a fraudulent act. In his amended complaint, the counterclaim for fraud states a cause of action for the common law tort of deceit. Thus, in ruling on the motion for a directed verdict on this cause of action, the judge had to consider whether Whitfield had introduced evidence from which each element of common law fraud could at least be reasonably inferred. Failure to produce evidence on any one of these elements would be fatal to Whitfield's case. *See King v. Oxford*, 282 S.C. 307, 311, 318 S.E. (2d) 125, 127 (Ct. App. 1984).

We hold that even if the first three particulars could be factually proven they would not establish common law fraud.[2] Fraud consists of making a false statement that is material and is intended to and does deceive. *See King v. Oxford*, 282 S.C. 307, 318 S.E. (2d) 125 (Ct. App. 1984). Whitfield introduced evidence that, viewed in the light most favorable to him, created a factual issue regarding *misfeasance*, not *misrepresentation*. Thus, there was no evidence to send to the jury on a claim of fraud.

Unlike the first three particulars, the fourth one did involve a statement by Mendelsohn. However, Whitfield's own evidence showed the statement was true, not false. Therefore, it could not, as a matter of law, form the basis for a claim of fraud.

The final decree in the divorce action was entered on February 24, 1986. Mendelsohn received a copy of the order the next day, February 25. Under the rules of court then in effect, the time for serving the Notice of Intent to Appeal began to run on the 25th. *See* Rule 1, Section 1, Rules of Practice in the Supreme Court and Court of Appeals of South Carolina (1985). The rules required Whitfield's Notice to be served on the adverse party by March 7, 1986, and filed with the Clerk of the Supreme Court by March 17, 1986. *See Id.* In order to protect Whitfield's right to appeal, Mendelsohn prepared and presigned a Notice of Intent to Appeal with accompanying certificates of service and filing. He duly served the Notice on the attorney for Whitfield's former wife on March 4, 1986, well within the time prescribed by rule. Accordingly, as of March 4th, Whitfield was fully protected if he wished to proceed with an appeal.

On the same day, Mendelsohn also wrote a letter to Whitfield. In the letter he advised his client that he had ten days in which to make a decision whether to appeal any part of the family court's order. he went on to state:

> I have gone over the Order in great detail and, quite frankly, don't think an appeal would be of any value to

---

[2] These acts, if proven, would also have established Whitfield's claims for professional malpractice and conversion. Since the jury found against Whitfield on malpractice and conversion, they necessarily found that Mendelsohn was not, in fact, guilty of doing the things Whitfield said he had done.

you; however, you must make that final decision. * * * * Please let me know what you want to do about the appeal, if anything.

In his own hand at the bottom of the letter, Mendelsohn wrote: "3/4/86—I've protected you on the appeal. Call! Joe." Mendelsohn never filed the presigned Notice of Intent to Appeal with the required filing fee in the Supreme Court; nor did he take any other steps to perfect an appeal for Whitfield.[3]

Whitfield contends the handwritten notation, "I've protected you on the appeal," was fraudulent in view of Mendelsohn's failure to perfect the appeal. In fact, the statement was true, because Mendelsohn had served the Notice of Intent to Appeal on March 4, 1986. At that point, Whitfield was fully protected if he wished to pursue an appeal. The truth or falsity of a statement must be determined as the time it was made. *Winburn v. Insurance Co. of North America*, 287 S.C. 435, 339 S.E. (2d) 142 (Ct. App. 1985). A statement that is not false cannot give rise to a cause for fraud. *Moye v. Wilson Motors, Inc.*, 254 S.C. 471, 176 S.E. (2d) 147 (1970).

Moreover, even if the notation were taken as a statement that Mendelsohn would perfect the appeal in due course, it would not be actionable fraud. Evidence of statements as to future events that later were unfulfilled does not establish fraud. *Foxfire Village, Inc. v. Black & Veatch, Inc.*, 304 S.C. 366, 404 S.E. (2d) 912 (Ct. App.). *cert. denied*, (S.C. Sup. Ct. filed Sept. 14, 1991, Davis Adv. Sheet No. 21); *Darby v. Waterboggan of Myrtle Beach, Inc.*, 288 S.C. 579, 344 S.E. (2d) 153 (Ct. App. 1986); *Emerson v. Powell*, 283 S.C. 293, 321 S.E. (2d) 629 (Ct. App. 1984)

Given the evidence before him, the trial judge was correct in directing a verdict on the counterclaim for common law fraud.

---

[3] The evidence relating to failure to appeal the divorce decree was in sharp conflict. Mendelsohn testified that Whitfield instructed him not to go forward with the appeal. Whitfield claimed that immediately at the end of trial he instructed Mendelsohn to appeal. He also testified that after receiving Mendelsohn's March 4th letter, he called Mendelsohn's law office and asked his secretary to have Mendelsohn call him, that he wanted to proceed with the appeal. Whitfield's version of the facts, if proven, would also have established his claim for professional malpractice. Since the jury found against Whitfield on malpractice and negligence, they necessarily believed Mendelsohn's version of the facts, not Whitfield's.

## B.

The tort of conspiracy consists of a combination of two or more persons, for the purpose of injuring the plaintiff, which causes him special damages. *Lee v. Chesterfield General Hospital, Inc.*, 289 S.C. 6, 344 S.E. (2d) 379 (Ct. App. 1986). According to Whitfield, the particulars of the conspiracy he alleged were: First, Mendelsohn, without his authority, agreed for his former wife to have temporary child custody until the final divorce hearing. Second, Mendelsohn did not call witnesses in the divorce case to support his claim for child custody. Third, Mendelsohn allowed documents to be received in evidence without objection when he knew they had been altered by his former wife's attorney. Fourth, Mendelsohn did not perfect an appeal in the divorce case.[4] Even if these facts could be proven, they merely show Mendelsohn, individually, did or did not do certain things that arguably prejudiced Whitfield's divorce case. They do not give rise to a reasonable inference that Mendelsohn combined with other persons for the purpose of injuring Whitfield. Neither do they support a reasonable inference, standing by themselves, that the acts and omissions were designed "wilfully to injure" Whitfield. *See Lee v. Chesterfield General Hospital*, 289 S.C. at 13, 344 S.E. (2d) at 383 (quoting Lord Cave, L.C. in *Sorrell's Case* [1925] A.C. 700, 712). Whitfield suggests no other evidence from which either a combination or wilfulness could be inferred, nor are we aware of any from our review of the record. Accordingly, we hold the judge was correct to direct a verdict on the conspiracy claim.

## V.

Whitfield also argues the judge erred in granting a directed verdict to Mendelsohn on the issue of punitive damages. Since Whitfield failed to prove claims for fraud and conspiracy as a matter of law, he was not entitled to recover punitive damages on those claims. *See Phillips v. Universal Underwriters Insurance Co.*, 43 N.C. App. 56, 257

---

[4] These acts, if proven, would also have established Whitfield's claim for professional malpractice. Since the jury found against Whitfield on malpractice, they necessarily found that Mendelsohn was not, in fact, guilty of doing the things Whitfield said he had done.

S.C. (2d) 671 (1979). Similarly, because the jury exonerated Mendelsohn of malpractice and conversion as a matter fact, Whitfield could not recover punitive damages on those claims. *See Dowling v. Home Buyers Warranty Corp.*, — S.C. —, 428 S.E. (2d) 709 (S.C. Sup. Ct. 1993); *Duke v. Parker*, 125 S.C. 442, 118 S.E. 802 (1923); *Cook v. Atlantic Coast Line R. Co.*, 183 S.E. 279, 190 S.E. 923 (1937) (where jury absolves defendant of inflicting actual damages on plaintiff, there is no legal liability for punitive damages). Accordingly, the granting of a directed verdict on the issue of punitive damages was not prejudicial error.

## VI.

Finally, Whitfield claims he is entitled to a new trial because the judge admitted the Complaint into evidence and permitted the jury to take it with them to the jury room in violation of Rule 43(g), SCRCP. He also contends the jury improperly added interest and court costs to the verdict for Mendelsohn based on the prayer in the Complaint.

The court admitted the Complaint into evidence without objection by Whitfield. If a party does not object to the admission of evidence when it is offered, he cannot make its admission a ground of appeal. *Young v. Smith*, 168 S.C. 362, 167 S.E. 669 (1933). As the Complaint was in evidence, the jury was permitted to have it before them during their deliberation. *See United States v. Foster*, 815 F. (2d) 1200 (8th Cir. 1987). Furthermore, any prejudice Whitfield suffered from the jury adding interest and court costs to the damages was cured when the judge granted his motion to subtract the interest and costs from the verdict before entering judgment on it. A party cannot appeal from the granting of his own motion. *Cf. Stroud v. Stroud*, 299 S.C. 394, 385 S.E. (2d) 205 (Ct. App. 1989).

Affirmed.

GARDNER and SHAW, JJ., concur.